UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


DEANUNRAE DRUMGOLE, ET AL.                    CIVIL ACTION

v.                                            NO. 14-2827

JOHN FRUMVELLER, ET AL.                       SECTION "F"


ORDER AND REASONS

Before the Court is the defendants' motion to dismiss or for summary judgment.[1]  For the reasons that follow, the motion is GRANTED.

Background

This case arises from the allegedly unlawful seizure of and excessive force used against the plaintiffs' three minor children, Jakyren Bissant (male, age 15), Lanyla Desmond (female, age 11), and Devin Desmond  (male, age 9).  On the evening of December 15, 2013, the three children were walking in their neighborhood when they were stopped by Officers Frumveller, Coll, and Rappold of the

---

[1] The defendants title their motion "Motion to Dismiss; Alternatively, Motion for Summary Judgment."  The memorandum in support, however, briefs only the law applicable to summary judgment, and in their reply, they refer to their motion as one for summary judgment.  Moreover, the Court has before it matters outside the pleadings, such as the recordings of the victim's call to police and the police dispatch.  In accordance with Federal Rule of Civil Procedure 12(d), the Court must therefore construe the motion as one for summary judgment.

Kenner Police Department.  The officers were responding to a report of a robbery at 2621 Augusta Street in Kenner, LA, by "three black male juveniles," one of whom was identified as wearing "a red and white t-shirt."  The dispatch said that the juveniles were running towards Veterans Boulevard.  The officers came across this group of children walking or running along 27th Street, which runs parallel to Veterans, and stopped them.  Jakyren was wearing a polo shirt with red, white, black, and gray stripes.

The plaintiffs contend that the oldest child, Jakyren Bissant, who suffers from autism spectrum disorder and moderate intellectual disability, froze and said he had done nothing wrong when Officer Frumveller yelled at the children, "Get your f***ing hands on the car."  Frumveller threw Jakyren to the ground, who then tucked his body to protect himself from the officer.  Officer Coll then tasered the boy three times before handcuffing him and putting him in the back of a police car.  When the younger children tried to run to a neighbor's house to get away from the police, Officer Rappold grabbed them, pushed Devin Desmond's arm up his back, and threw the children into the back of a police car.  The robbery victim was brought to the scene, and he told the officers that the three children were not his robbers.  The two younger children were released to their parents, and Jakyren was arrested for resisting arrest.

The plaintiffs contend that as a result of the children's

2

unlawful seizures, the children suffered mental, emotional, and physical pain and suffering.   They sue under 42 U.S.C. § 1983, contending that the arrests were made without probable cause and with excessive force, in violation of the Fourth and Fourteenth Amendments to the United States Constitution; they also bring claims under state law for battery and false arrest.   The plaintiffs allege that the City of Kenner is liable for the tortious actions of its officers under the theory of respondeat superior, because the officers were acting in the course and scope of their employment with the City.   Finally, believing that the officers' actions were malicious and wanton, the plaintiffs seek punitive damages.

The defendants now move for summary judgment, contending that the plaintiffs cannot establish that the stops were without probable cause and that the force used was unreasonable.   The officers contend that qualified immunity protects them from suit. The defendants also submit that the City is not liable, because the plaintiffs have not suggested that there was a policy or decision that was officially adopted and promulgated by the City.   The plaintiffs respond that more discovery-in particular, depositions of the defendant officers-is needed, and thus the Court should defer consideration of the motion for summary judgment.   They submit, in the alternative, that material facts are in dispute.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot

4

be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

II.

*A.*

Title 42, U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To establish § 1983 liability, the plaintiff must satisfy three elements:

> (1)  deprivation of a right secured by the U.S. Constitution or federal law,
>
> (2)  that occurred under color of state law, and
>
> (3)  was caused by a state actor.

<u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

5

*B.*

When a plaintiff seeks money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity.  Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established that the time of the challenged conduct." Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011)); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (This doctrine protects government officials against individual civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223 (2009) (noting that "[t]he protection of qualified immunity applies regardless of whether the government

official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."). In fact, "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

In resolving a government official's qualified immunity defense, courts have traditionally applied the two-prong process articulated in Siegert v. Gilley, 500 U.S. 226 (1991), and confirmed by the Supreme Court again in Saucier v. Katz, 533 U.S. 194 (2001). First, the Court must determine whether the plaintiffs have shown a violation of a constitutional right. Id. at 201. The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223 (2009). Although the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all." Reichle, 132 S.Ct. at 2093 ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); Camreta v. Greene, 131 S.Ct. 2020, 2031 (2011) (observing that "our usual adjudicatory

rules suggest that a court *should* forbear resolving this issue") (emphasis in original); <u>Pearson</u>, 555 U.S. at 238-39 (listing circumstances in which courts might be best served to bypass the first step of the <u>Saucier</u> process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

In other words, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, so we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate." <u>Morgan v. Swanson</u>, 659 F.3d 359, 370-71 (5th Cir. 2011) (en banc) (internal quotations, citations, and footnotes omitted).  Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable. <u>Collier v. Montgomery</u>, 569 F.3d 214, 217-18 (5th Cir. 2009); <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). "Although qualified immunity is 'nominally an affirmative defense,' the plaintiff bears a heightened pleading burden 'to negate the defense once properly raised.'" <u>Newman v. Guedry</u>, 703 F.3d 757, 761 (5th Cir. 2012) (quoting <u>Brumfield v. Hollins</u>, 551 F.3d 322, 326 (5th Cir. 2008)).

III.

The plaintiffs request relief under Federal Rule of Civil Procedure 56(d), contending that further discovery–particularly the depositions of the arresting officers and Tracy Allo, who attested to the 911 call, radio transmission, and call for service report–is needed to decide the question of qualified immunity.[2]   Rule 56(d) allows nonmovants to identify and request discovery of such information "by affidavit or declaration."  In response, "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  FED. R. CIV. P. 56(d).  "The nonmoving party must show how the additional discovery will defeat the summary judgment motion, that is, will create a genuine dispute as to a material fact, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts."  Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) (internal quotation and citation omitted). Rule 56(d) rulings lie within the district court's sound, but "not entirely unfettered," discretion.  Id.

Although Rule 56(d) requests are generally favored, in qualified immunity cases, the balancing of the movant's

---

[2] The plaintiffs already have the recording of the robbery victim's call to police, the dispatcher's report of the incident over the police radios, and the officers' radio communications while on the scene.

9

demonstrated need for discovery against the burden it will place on the opposing party tips in favor of denial. The Supreme Court explained:

> One of the purposes of the Harlow qualified immunity standard is to protect public officials from the "broad-ranging discovery" that can be "peculiarly disruptive of effective government." For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation. Thus, on remand, it should first be determined whether the actions the Creightons allege Anderson to have taken are actions that a reasonable officer could have believed lawful. If they are, then Anderson is entitled to dismissal prior to discovery. If they are not, and if the actions Anderson claims he took are different from those the Creightons allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before Anderson's motion for summary judgment on qualified immunity grounds can be resolved. Of course, any such discovery should be tailored specifically to the question of Anderson's qualified immunity.

Anderson v. Creighton, 483 U.S. 635, 668 n.6 (1987) (internal citations omitted).

Here, viewing the facts in the light most favorable to the plaintiffs, the actions taken by the officers were arguably an affront, but not unreasonable. Thus, the officers are entitled to dismissal prior to discovery. The plaintiffs contend that discovery is relevant to the probable cause determination; it could help the Court better understand what the officers knew at the time. Depositions would also provide greater specificity as to the force used and the officers' reasons for using it, the plaintiffs submit. Ms. Allo's deposition would reveal the meaning of police

codes used throughout the radio transmissions.

The plaintiffs do not persuade, however, how additional discovery could lead to a genuine dispute as to material facts. The simple facts of this case are not disputed.[3]  The parties do not dispute the content of the 911 call and police dispatch that provided the officers with probable cause to stop the plaintiffs' children; they do not dispute where the children were found or that Jakyren matched generally the description of one of the perpetrators; they do not dispute the amount of force used; and they do not dispute that the younger children ran away from the police or that Jakyren was resisting arrest.  Because "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery," the officers' immunity claim warrants a ruling on their motion for summary judgment without further discovery.  Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009).

IV.

"[E]ach individual defendant's entitlement to qualified immunity [should be examined] separately."    Jacobs v. West

---

[3] It is for this same reason that the Court finds that any factual dispute is immaterial.  The plaintiffs submit a list of facts allegedly in dispute, including, for example, whether the children matched the description of the robbers, what information the victim provided to the police, or what direction the children were running in.  The facts, however, are not disputed.  The Court has the audio recordings of the description and the call to the police.  The defendants admit, also, that the children were not running towards Veterans Boulevard.

11

Feliciana Sheriff's Dept., 228 F.3d 388, 395 (5th Cir. 2000) (citation omitted).   The Court will take each officer and each claim in turn.

### A. Unlawful Seizure

"Whether an arrest is illegal hinges on the absence of probable cause."  Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir. 1998).   The question is whether a "reasonable officer could have believed plaintiff's arrest to be lawful, in light of clearly established law and the information the arresting officers possessed at the time."  Anderson, 483 U.S. at 638.   The Court underscores that a mistaken but reasonable belief as to the existence of probable cause is allowed.   Baker v. McCollan, 443 U.S. 137, 144-45 (1979).

### i. Officer Frumveller

What Frumveller knew was that a Kenner man had called the police after being hit in the face and robbed of his cell phone by "three black male juveniles."  He knew that one was wearing a red and white t-shirt and that the group was running towards Veterans Boulevard, necessarily crossing 27th Street.   He then spotted a group of three black children on 27th Street, and one was wearing a red, white, gray, and black striped polo shirt.   Even the plaintiffs admit that Jakyren matched, for the most part, the description given by the dispatcher.   He was the same race, age, and sex of the perpetrator, and he was wearing what could generally

be described as a red and white shirt.  The stop of Jakyren was supported by probable cause.

### ii. Officer Coll

The same analysis as to Officer Frumveller applies to Officer Coll.  He likewise had probable cause to believe that Jakyren had committed a crime, and stopping him to question was reasonable.

### iii. Officer Rappold

The Supreme Court distinguishes between two forms of seizure, each of which garners a different level of scrutiny.  An officer may detain an individual briefly for investigatory purposes if, under the totality of the circumstances, he has reasonable suspicion based on specific and particularized facts that the person is involved in criminal activity.  <u>Terry v. Ohio</u>, 392 U.S. 1, 21-22 (1968).  The <u>Terry</u> inquiry involves examining whether the initial action was justified and, then, determining whether any subsequent action was reasonably related in scope to either the circumstances that justified the stop or to dispelling a reasonable suspicion that developed during the stop.  <u>United States v. Brigham</u>, 382 F.3d 500, 506-07 (5th Cir. 2004) (en banc).  The facts leading to a finding of reasonable suspicion do not have to be based on a law enforcement officer's personal observation, but can also arise from the "collective knowledge" of law enforcement entities, so long as that knowledge gives rise to reasonable suspicion and was communicated between those entities at the time

of the stop.  <u>United States v. Ibarra-Sanchez</u>, 199 F.3d 753, 759-60 (5th Cir. 1999).

A detention initially authorized by <u>Terry</u> can transform into the equivalent of an arrest and thus require probable cause. <u>United States v. Massi</u>, 761 F.3d 512 (5th Cir. 2014).  A <u>Terry</u> detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." <u>Brigham</u>, 382 F.3d at 507. "[T]he investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." <u>Florida v. Royer</u>, 460 U.S. 491, 500 (1983).

The defendants do not explicitly classify the seizure of the Desmond children as a <u>Terry</u> stop, referring to it only as a "seizure" and contending that probable cause supported the detention.  They do, however, invoke non-arrest case law and argue that the detention was not unreasonably prolonged.  It seems, therefore, that they make an argument that the seizure was a <u>Terry</u> stop, and to the extent that they do, the Court agrees.  After attempting to flee, the children were held in the back of a police car while the robbery victim was brought to the scene to make an identification.  Not unreasonable.  When he could not positively identify the children, they were released to their parents.  Which was absolutely proper.  There is no allegation that the children

were detained for a long period of time; they were not transported anywhere. Allowing the victim to see them for identification was the least intrusive means to determine that they were not involved in the robbery. Thus, their detention qualifies as a <u>Terry</u> stop, requiring only a reasonable suspicion of involvement in criminal activity, not probable cause. <u>Cf.</u> <u>Hayes v. Florida</u>, 470 U.S. 811, 817 (1985) ("[T]he Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch.").

The defendants submit that the children's detention was reasonable. Officer Rappold insists that he heard the robbery perpetrators described over the radio as "three black juveniles," one wearing a red and white shirt. That he then heard one of the first responding officers report that two of the suspects were fleeing down 27th Street. That he saw two black juveniles running down the street, so he stopped his car and got out. And that he detained them without incident and put them in the back of his car. A short time later, another officer brought the robbery victim to the scene, and he could not identify the children.

The plaintiffs contend, however, that the description over the radio was not "three black juveniles" but rather "three black male

juveniles," and no reasonable officer could have found that Lanyla and Devin Desmond fit the description of "black male juveniles." Lanyla was an eleven-year-old girl, and Devin was a small, nine-year-old boy.

As to Devin, despite his young age and small size, he does fit literally the description broadcast, which is of record.  Officer Rappold did not hear the victim's description of the group of children as "teenagers;" he heard only the police dispatcher who called them "juveniles."  That Devin had already been identified as a suspect by a first responding officer who reported that he was fleeing from police further supports a finding of a reasonable suspicion of involvement in criminal activity under the circumstances.

The description, of course, does not fit Lanyla.  However, because she was with the boys who did seem to match the description, running away from the police near the scene of the robbery, and because the police were operating off of a bare bones description by a flustered victim who was robbed outside in the dark, the Terry stop was supported by a reasonable suspicion.

### B. Excessive Force

To defeat summary judgment, the plaintiffs must show genuine disputes of material fact about whether (1) an officer violated an individual's constitutional right against excessive force; and (2) the officer's conduct was objectively reasonable in light of

16

clearly established law at the time of the conduct.  <u>Poole v. City of Shreveport</u>, 691 F.3d 624, 627 (5th Cir. 2012).  The plaintiffs must show genuine disputes of material fact about both prongs.  To succeed on an excessive force claim, the plaintiffs must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  <u>Manis v. Lawson</u>, 585 F.3d 839, 843 (5th Cir. 2009) (internal quotation marks and citation omitted).

Whether force was reasonable is an objective inquiry.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989).  In other words, the reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  <u>Id.</u> at 396 (citation omitted).  Indeed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that necessary in a particular situation."  <u>Id.</u> at 396-97.

<u>Graham</u> instructs the Court to consider: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  <u>Id.</u> at 396.  This list is not exclusive, however, and

the Court may examine the totality of the circumstances.

### i. Officer Frumveller

Officer Frumveller contends that he physically took Jakyren to the ground in an effort to detain him, as he was trying to run to a nearby residence; the plaintiffs contend that he "threw Bissant to the ground." The plaintiffs admit that the boy was not following the officer's commands. They contend, however, that he did not pose a threat, that he did not know how to react because of his autism and intellectual disability. The Court does not discount the fear and surprise that the boy was experiencing when Officer Frumveller was yelling at him. It was not, however, objectively unreasonable for Frumveller to respond to the boy's failure to obey commands by taking him to the ground. Thus, Officer Frumveller is immune from suit for his actions.[4]

### ii. Officer Coll

Officer Coll contends that his tasering the boy was reasonably proportionate to the situation faced by the officers. The officers contend that Jakyren was on the ground, concealing his hands under his body, and that he had previously tried to grab an officer's radio. Coll's reaction to this "difficult, tense, and uncertain situation" was to taser Jakyren three times.

Turning to the <u>Graham</u> factors, the Court finds that Coll's use

---

[4] And nothing of record establishes Frumveller knew or should have known of Jakyren's condition.

18

of force was not objectively unreasonable.  Taking the plaintiffs' version of events as true, as the Court must do at the summary judgment stage, Jakyren tucked his body to protect himself from the police.  An unarmed, challenged young boy, he posed no threat to the officers' safety.  He was not a flight risk, seeing as Officer Frumveller had already pinned him to the ground.  He was, however, resisting arrest by his own account.  Although Officer Coll likely could have effected the arrest without using the Taser, the Court must consider only whether Coll's actions were objectively unreasonable, not whether better or less intense actions could have or should have been taken.  The answer to the latter question is undoubtedly yes.  But because Jakyren was resisting arrest for the crime of robbery, two of the three _Graham_ factors are present.  Thus, Officer Coll's actions were not objectively unreasonable, and he is shielded from liability.

### iii. _Officer Rappold_

The plaintiffs contend that the force Officer Rappold used in detaining the children was excessive.  They submit that Rappold pushed up Devin's hands behind his back and grabbed Lanyla to place her into the police car.[5]  The defendants counter that any harm the children suffered was _de minimis_ and thus not actionable.  They

---

[5] The plaintiffs contend that because the children's detention was unlawful, any force used is especially unjustifiable.  The legality of the seizure and of the force are two separate questions, however.  _See_ _Freeman v. Gore_, 483 F.3d 404, 417 (5th Cir. 2007).

submit that placing the children in the car was objectively reasonable and did not constitute excessive force.

The injury for an excessive force claim must be more than *de minimis*. Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is "directly related to the amount of force that is constitutionally permissible under the circumstances." Ikerd v. Blair, 101 F.3d 430, 435 (5th Cir. 1996); see Williams, 180 F.3d at 703 ("In determining whether an injury caused by excessive force is more than *de minimis*, we look to the context in which that force was deployed."). Purely psychological injury can serve as a basis for liability. Mesa v. Prejean, 543 F.3d 264, 272 (5th Cir. 2008) (citing Tarver v. City of Edna, 410 F.3d 745 (5th Cir. 2005)).

In Freeman v. Gore, the Fifth Circuit reversed the district court's denial of summary judgment, finding that any force used against Freeman was not excessive. 483 F.3d 404, 416-17 (5th Cir. 2007) (Dennis, J.). Freeman alleged that "the deputies twisted her arms behind her back while handcuffing her, 'jerked her all over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms." The district court had denied the deputies' motion for summary judgment as to the excessive force claim, noting that Freeman had to seek medical treatment for her injuries. The Fifth Circuit, however, held that

20

her injuries were minor, incidental injuries, that did not rise to a constitutional claim for excessive force.

Any slight injuries or psychological distress that the children may have suffered because of their distasteful experience with the Kenner police officers, though not to be taken lightly, does not give rise to a constitutional excessive force claim. Their being placed in the back of a police car after fleeing from the police was reasonable, and the manhandling that Devin endured was minor and incidental to the encounter.

For the foregoing reasons, the plaintiffs' state false arrest and battery claims fail as well.  Where a detention is not unlawful, there is no false arrest.  Toughton v. Kroger, 512 So.2d 520, 524 (La. Ct. App. 1987).  Only the use of excessive force transforms protected use of force into an actionable battery. Manis v. Zemlik, 96 So.3d 509 (La. App. 5 Cir. 2012).  Similarly, because the individual officers are not liable, neither is the City of Kenner.

Accordingly, IT IS ORDERED that the defendants' motion for summary judgment is hereby GRANTED.  The case is DISMISSED.


New Orleans, Louisiana, May 13, 2015


MARTIN C. C. FELDMAN
UNITED STATES DISTRICT JUDGE

21